IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCIENTIFIC DRILLING INTERNATIONAL, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. H-06-1634 |
| PATHFINDER ENERGY SERVICES, INC., GEORGE MOODY, BEN LEE, GREG CAIN, MICHAEL R. FRANKLIN, KELVIN 'DAVID' SMITH, and RICHARD WADLEY, | § § § § § § § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Defendants' Motion for Partial Summary Judgment (Document No. 7). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

## BACKGROUND

Plaintiff Scientific Drilling International, Inc. ("SDI"), a Texas corporation with its principal place of business in Houston, Texas, is a company that offers survey technology and directional drilling services to the oil and gas industry. On October 13, 2005, SDI filed a civil action in Texas state court alleging Defendant Pathfinder, a

Louisiana corporation having its principal place of business in Houston, Texas, wrongfully solicited and hired several key SDI employees to unfairly compete with it in an attempt to harm SDI's business. Also named as Defendants are former employees, George Moody, Ben Lee, Greg Crain, and Michael R. Franklin (collectively, "former employees").

On May 12, 2006, Defendants properly removed the instant action to federal district court after SDI amended its petition, alleging the Defendants' violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. In response to SDI's complaint, the former employees counterclaim for breach of contract. Specifically, the former employees allege that SDI improperly refused to pay them their vested employee benefits.

In 1999, SDI created the "Value Appreciation Rights Plan" ("VAR Plan" or "Plan"), an employee performance incentive plan.[1] Each year SDI has discretion to allow an employee to participate in the Plan and to grant VAR awards, but an employee has no automatic right to participate.[2] At various times during the course of the former

---

[1] In 1999, SDI invited eligible employees to enroll in the VAR Plan by signing the signature page of the Plan's "Voting Agreement and Irrevocable Proxy" agreement although employees were not required to participate. Subsequent to the 1999 enrollment period, the record does not reflect how an employee becomes eligible to participate.

[2] The VARs are given to employees as a single award comprised of a stated number of units. The units are similar to stock options. The units, granted yearly, are given a base

employees' employment, SDI awarded each former employee a stated number of VAR units, many of which are vested.[3]

Each former employee left SDI during September 2005, and began working for Pathfinder shortly thereafter.[4] Throughout September, each former employee submitted his two-week resignation letter to SDI.[5] After the employees left, SDI sent each employee a letter, dated October 17, 2005, notifying him that he had forfeited any rights in the VAR plan when he resigned his employment with SDI to accept a position with Pathfinder, an SDI competitor.[6] Consequently, SDI did not pay the former employees the value of their vested VARs, alleging that they forfeited the awards by

---

date of April 30th, and then vest over time. The base value of each unit is determined by SDI's financial information from the previous year. For example, the base value of the April, 2005 units is determined by using SDI's financial information of December 31, 2004. The four former employees currently have a total number of vested and unvested VAR units ranging from 188,000 to 229,000 units with values of approximately $90,500 to $115,000.

[3]Once an award has vested, the employee has the right to request payment for vested VARs during the exercise window between June 30 and September 30 each year. If an employee voluntarily leaves SDI, his vested VARs are automatically exercisable.

[4]The record does not reflect the precise date that the former employees began working for Defendant Pathfinder after they left SDI.

[5]Two former employees gave no explanation for their resignation. One employee stated that he was leaving due to changes in company policies and culture that had become a drain on his energy and enthusiasm. Another employee stated that he was resigning to pursue another opportunity.

[6]The letter explained that accepting employment with a competitor constitutes a termination for cause as defined in section 7(b) of the Plan.

taking property that belonged to SDI when they left.

In response, the former employees challenge SDI's position, arguing that under the Plan's terms, they did not forfeit their vested VARs because they left voluntarily and were not terminated for cause. In essence, the parties dispute whether the language of the VAR Plan entitles the former employees to their vested awards. On June 8, 2006, the former employees moved for partial summary judgment asking the Court to determine whether SDI owes them the value of their vested VARs.

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view the evidence in a light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come "forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could

4

return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

## LAW AND ANALYSIS

The former employees allege they are entitled to vested amounts owed to them under SDI's VAR Plan. Both sides agree the Plan is a contract between SDI and its employees. Thus, the determination of whether the former employees are entitled to their vested VARs is a matter of contract interpretation.[7]

The Court notes at the outset that in construing a written contract, it must endeavor to ascertain the intent of the parties as expressed in the document. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Generally, courts should consider the entire writing in order to give effect to all provisions of the contract so that no provision will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). If the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous and creates a fact issue as to the parties' intent. *J.M. Davidson, Inc.* 128 S.W.3d at 229. Deciding whether a contract is ambiguous is a

---

[7] The motion before the Court addresses the former employees' contractual right to their vested VARs under the Plan. The instant motion does not address, and the Court does not decide, whether the former employees have a right to receive the value of their vested VARs pursuant to other principles of law.

question of law for the court. *Id.* If a contract is worded in such a manner that it can be given a definite or certain legal meaning, then it is not ambiguous, and a court can construe the contract as a matter of law. *Id.*; *Friendswood Dev. Co. v. McDade*, 926 S.W.2d 280, 282 (Tex. 1996). Thus, the Court must first examine the language of the contract and determine whether it is ambiguous.

Here, the former employees assert that they are automatically entitled to their vested Plan benefits because they voluntarily left their employment and were not terminated by SDI. In opposition, the company makes two arguments. First, it argues that the granting of awards is discretionary under Section 6, and this discretion allows it to make a final determination whether the employee is entitled to his VARs. Second, the company contends that the employees took SDI's confidential and proprietary information, that this action triggered the termination provision of Section 7(b), and that consequently, the former employees forfeited their right to their vested VARs.[8] As a result of these contentions, the Court will determine whether the plain language of Sections 6 and 7 of the Plan caused the employees to forfeit their right to their vested VARs.

Under the Plan, SDI may grant awards to employees for their contributions to

---

[8] SDI also argues that the employees authorized a Plan amendment which gives SDI the right to forfeit their VAR benefits. However, the amendment does not affect the Court's analysis of the employees' contractual rights in this dispute.

the company's success. SDI correctly asserts that Section 6 gives it discretion whether to grant awards.[9] The parties agree that throughout the terms of the former employees' tenure at the company, SDI exercised its discretion and granted them awards under the Plan, as shown by their monthly VAR statements.

SDI argues that, in addition to their discretionary right to grant an award, Section 6 also gives it discretion to make a final determination whether the employees are entitled to their Plan benefits when they leave. Read in its entirety, Section 6 gives SDI the discretionary right to grant an award and to create an award agreement in accord with the Plan.[10] However, the Court notes that Section 6, on its own, does not give SDI discretion to make a final determination whether an employee is entitled to his Plan benefits after SDI grants such an award. Consequently, the Court finds this provision in Section 6 is not ambiguous and does not allow SDI discretion to withhold benefits previously granted to an employee.

However, Section 7 of the Plan may alter an employee's right to obtain his or her

---

[9]Section 6 states, "[t]he granting of Awards under this Plan shall be entirely discretionary and nothing in this Plan shall be deemed to give any employee . . . any right to participate in this Plan or to be granted an Award. Each Award made hereunder shall be embodied in an Award Agreement containing such terms, conditions and limitations as shall be determined by the Committee, in its sole discretion, consistent with the provisions of the Plan and shall be signed by the Participant and by a member of the Committee."

[10]Under Section 6, if SDI grants an award, the employees must sign the award agreement before the award will take effect.

7

vested VARs. Thus, Section 7, which specifies circumstances under which employees may receive their vested awards upon leaving SDI, is at the heart of this dispute. SDI argues that under Section 7(b), the employees forfeited their awards. However, the former employees rely on Section 7(a) to support their contention that their vested benefits were automatically due when they left SDI.

Under Section 7(a) of the Plan, "[i]f a Participant's Employment is terminated other than under circumstances described in Sections 7(b) . . . , then the Participant['s] . . . portion of his or her Award that is exercisable shall be subject to the automatic exercise provision in Section 9(b)." Thus, under a plain reading of the provision, an employee, who is no longer working for the company and who has any exercisable awards, may automatically redeem them under Section 9(b) unless the circumstances of the employee's termination triggers 7(b). Section 7(b) contains the circumstances under which an employee would forfeit his or her awards.[11]

SDI contends the former employees fall under Section 7(b), which mandates that

---

[11]As the Court noted earlier, the parties' arguments concerning the former employees' rights to their vested VARs include a discussion about a subsequent amendment to the Plan that altered the definition of cause. However, under the Court's analysis, the amendment and its definition of a cause for termination has no bearing on the disposition of the current motion.

8

employees forfeit their awards upon being terminated for cause.[12] SDI argues the former employees took confidential and proprietary information that belonged to it. Accordingly, SDI argues that taking this private information renders them terminated for cause. In contrast, the former employees argue that they could not have been terminated for cause because they voluntarily left the company. Consequently, construction of the phrase "is terminated for cause" is the dispositive issue.[13]

Grammatically, the phrase "is terminated for cause" uses a verb tense stated in the passive voice rather than the active voice. Phrases constructed in the passive voice use an implied subject or actor who carries out the verb. The dictionary's grammatical definition of "passive" states that "the subject undergoes the action of the verb." THE RANDOM HOUSE COLLEGE DICTIONARY 972 (Jess Stein, ed., Random House, Inc. 1980)

---

[12] Section 7(b) states, "[i]f a Participant's Employment or, in the case of a Retiree, Membership *is terminated for Cause*, then any outstanding Award to the participant shall be immediately forfeited and of no further force or effect with respect to both any exercisable portion and any unexercisable portion of such Award as of the date of such termination." (emphasis added.)

[13] SDI analogizes their Plan language with the language of a stock option plan in *Int'l Bus. Machs. Corp. v. Martson*, 37 F. Supp. 2d 613 (S.D.N.Y. 1999), in which the employee was not allowed to keep his vested stock options after he voluntarily left the company. However, a specific provision of that stock option plan gave the employer the right to rescind the award of benefits "if the employee goes to work for a competitor within 6 months after exercising the vested option." *Id*. at 618. That provision did not require the employee to be terminated for cause but was a separate provision that granted IBM the right to forfeit the employee's vested benefits if the employee went to work for a competitor. With or without the amended definition of cause, SDI's Plan only allows the employees to forfeit their benefits if they are terminated for cause.

(1968). For example, "he is carried" is stated in the passive voice. The sentence implies, but does not state, who is carrying the person. In this case, the employee is terminated. The sentence implies, but does not state, who is terminating the employee. To correctly ascertain the meaning of a sentence written in the passive voice, the sentence should be converted to the active voice. *See, e.g., Illinois Cent. Gulf R.R. Co. v. R.R. Land*, 988 F.2d 1397, 1408 (5th Cir. 1993) (finding a contract's passive language created an affirmative duty on the party to the contract).

If Section 7(b) were written in the active voice, the construction of the phrase "is terminated for cause" would then state who is terminating the employees. In this case, the logical agent terminating the employee is SDI. Changing the sentence construction from passive to active voice, Section 7(b) would read "If [the employer] terminates a Participant's Employment . . . for Cause, then any outstanding Award to the participant shall be immediately forfeited . . . ."[14] The parties agree that SDI did not terminate the employees but that the employees resigned.[15] At any time, SDI had the discretionary

---

[14]The only construction that would render SDI's argument plausible, reading Section 7(b) in the active voice, is that the employee terminated himself, i.e. "If [the Participant] terminates a Participant's Employment . . . for Cause, then any outstanding Award to the participant shall be immediately forfeited . . . ." This construction is not plausible.

[15]SDI argues that by taking information from SDI, the employees triggered the definition of cause. However, although the Plan's definition of cause determines whether the employer had valid grounds to terminate an employee, the definition of cause is not relevant unless the employer terminates the employee.

right to terminate any of the former employees and trigger the Plan's 7(b) forfeiture provision. However, because SDI did not terminate the employees, SDI never triggered the forfeiture provision of 7(b).

Although the Plan is poorly worded, this does not constitute ambiguity or render the forfeiture provision unclear. *Id*. When the words of a contract are clear and explicit and lead to no absurd consequences, the Court is not obligated to search extrinsic evidence for the parties' intent. *Id*. Under the plain language of Section 7(b), SDI must terminate the employee in order for the employee to forfeit his or her benefits. If SDI does not terminate the employee, then under 7(a), an employee who resigns voluntarily is entitled to the VAR awards he or she has accrued. The Court concludes that although the passive voice renders the language of the Plan awkward, the Plan is not ambiguous or subject to more than one interpretation.

Accordingly, as a matter of law, the Court determines the former employees are contractually entitled to receive any awards that vested prior to their resignation from SDI. *See generally Coker v. Coker*, 650 S.W.2d 391, 393 (explaining that if a contract is not ambiguous, a court can construe the contract as a matter of law); *accord Phillips v. Parrish*, 814 S.W.2d 501, 503 (Tex. App.—Houston [1st Dist.], 1991, writ denied). The remaining issues of the defendants' claimed right to receive their vested VARs and the value of their vested VARs are not resolved at this time. Given the foregoing, the

Court hereby

ORDERS that the former employees' Motion for Partial Summary Judgment (Document No. 7) is GRANTED with respect to their vested VAR benefits.

SIGNED at Houston, Texas, on this 4th day of October, 2006.

*David Hittner*

DAVID HITTNER

United States District Judge